UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TREMAIN VERNON JONES (#412981),

                          CASE NO. 2:12-CV-12541
          Plaintiff,        JUDGE STEPHEN J. MURPHY, III
                          MAGISTRATE JUDGE PAUL J. KOMIVES

v.

ALEJANDRO PARRA,
GREGORY STOPZYNSKY,
ERIC DECKER,
BENITO MENDOZA,
OWEN MCGOWAN and
DETROIT POLICE DEPARTMENT,

          Defendants,
_____/

## REPORT AND RECOMMENDATION REGARDING MENDOZA AND DPD'S JANUARY 14, 2013 MOTION FOR SUMMARY JUDGMENT (Doc. Ent. 12)

Table of Contents

I.      RECOMMENDATION: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    REPORT: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
      A.    Plaintiff's Complaint Named Thirty-Five Defendants. . . . . . . . . . . . . . . . . . . . . 2
      B.    The Court Has Dismissed Twenty-nine of the Named Defendants. . . . . . . . . . . 4
      C.    Parra, Stopzynsky, Decker and McGowan Have Yet to Appear. . . . . . . . . . . . . 5
      D.    Mendoza and DPD Have Filed a Motion for Summary Judgment. . . . . . . . . . . . 5
      E.    The Court Should Construe Mendoza and DPD's Motion for Summary Judgment
           as a Fed. R. Civ. P. 12(b)(6) Motion to Dismiss and Grant Such Motion. . . . . . 6

III.   NOTICE TO PARTIES REGARDING OBJECTIONS: . . . . . . . . . . . . . . . . . . . . . . . . . 20

I.    **RECOMMENDATION:** The Court should (1) construe Mendoza and DPD's January 14, 2013 motion for summary judgment (Doc. Ent. 12) as a Fed. R. Civ. P. 12(b)(6) motion to dismiss and (2) grant such motion.

II.   **REPORT:**

A.    **Plaintiff's Complaint Named Thirty-Five Defendants.**

Tremain Vernon Jones (#412981) is currently incarcerated at the MDOC's Gus Harrison Correctional Facility (ARF) in Adrian, Michigan, where he is serving sentences imposed on April 24, 2006 in Case No. 05-9068-01 (Wayne County) for July 7, 2005 offenses;[1] on April 24, 2006 in Case No. 06-3310-01 (Wayne County) for August 11, 2005 offenses;[2] on April 24, 2006 in Case No. 06-3384-01 (Wayne County) for July 3, 2005 offenses;[3] and on May 9, 2006 in Case No. 06-0418-FC (Macomb County) for a July 13, 2005 offense.[4]  *See* Doc. Ent. 12 at 14-17.[5]

---

[1]Jones's application(s) for leave to appeal were denied by the Michigan Court of Appeals on May 21, 2007 and by the Michigan Supreme Court on September 24, 2007.  *See Jones v. Lafler*, Case No. 2:08-cv-14126-LPZ-MJH (E.D. Mich.) (Doc. Ent. 8-2); *see also People v. Jones*, No. 134428, COA No. 277677, 480 Mich. 893, 738 N.W.2d 745 (Sept. 24, 2007).

[2]*See Jones v. Lafler*, Case No. 2:08-cv-14126-LPZ-MJH (E.D. Mich.) (Doc. Ent. 8-3).

[3]*See Jones v. Lafler*, Case No. 2:08-cv-14126-LPZ-MJH (E.D. Mich.) (Doc. Ent. 8-4).

[4]On April 24, 2007, the Supreme Court of Michigan denied Jones's application for leave to appeal the December 20, 2006 order of the Court of Appeals.  *See People v. Jones*, No. 132912, COA No. 274519, 477 Mich. 1114, 729 N.W.2d 850 (Apr. 24, 2007).

[5]Tremain Jones (#412981) filed a petition for writ of habeas corpus on September 25, 2008.  Judge Zatkoff entered judgment in favor of respondent and against petitioner on April 14, 2011.  *See Jones v. Lafler*, Case No. 2:08-cv-14126-LPZ-MJH (E.D. Mich.).
   In the meantime, on June 15, 2010, Jones filed a prisoner civil rights complaint in the Western District of Michigan.  The January 3, 2012 amended complaint names four defendants, each of whom is identified as an employee at the MDOC's Carson City Correctional Facility (DRF).  On March 1, 2013, Judge Quist entered an order which in part denied Jones's motion for a temporary restraining order.  *See Jones v. Smith, et al.*, Case No. 1:10-cv-00568-GJQ-ESC (W.D. Mich.).

On June 12, 2012, while incarcerated at the MDOC's Macomb Correctional Facility (MRF) in New Haven, Michigan, Jones filed the instant case against thirty-five (35) defendants. Doc. Ent. 1 at 1-4, 7-11 ¶¶ 7-27, 48-51. The statement of facts underlying plaintiff's complaint begins with allegations regarding his August 23, 2005 arrest (¶¶ 30-34) and describes excessive use of force (¶¶ 35-44), denial of medical care (¶¶ 45-53) and, seemingly, a Racketeer Influenced and Corrupt Organizations Act (RICO)[6] violation (¶¶ 54-74). Doc. Ent. 1 at 13-26.

The complaint also discusses "Detroit Police Officers Acting as Complaining Witnesses," ¶¶ 75-77; Magistrates and Judges employed by Defendant 36th District Courthouse, ¶¶ 78-82; judges employed by defendant Wayne County Circuit Court, ¶¶ 83-84; the prosecuting attorney and assistant prosecuting attorneys employed by defendant Wayne County Circuit Court, ¶ 85; the criminal defense attorneys who represented the plaintiff during the events described in this complaint, ¶¶ 86-87; defendants 36th District Courthouse and Wayne County Circuit Court's involvement, ¶ 88; defendants Detroit Police Department (DPD), Michigan State Police Department and Wayne County Sheriff Department's involvement, ¶ 89-90; and defendants Godbee, Napoleon and Bing's involvement, ¶¶ 91-92. Doc. Ent. 1 at 26-34.

Jones's complaint sets forth counts for (I) abuse of process (¶¶ 93-99),[7] (II) selective enforcement, class-of-five violation (¶¶ 100-106), (III) use and/or application of the wrong procedure violation (¶¶ 107-111), (IV) declaratory judgment (¶¶ 112-116) and (V) injunctive

---

[6]RICO is codified at 18 U.S.C. §§ 1961-1968.

[7]Mich. Comp. Laws § 750.369 ("Abuse of legal process") states that "[a]ny officer or person who shall wilfully make any arrest or institute any legal proceedings, or sue out any process for the purpose of obtaining the fees or mileage that might accrue thereto or therefor, shall be guilty of a misdemeanor."

relief (¶¶ 117-120).  Doc. Ent. 1 at 35-43.  Additionally, plaintiff describes legal claims for relief (¶¶ 122-125), proximate cause of damages and harm to which the relief is sought (¶¶ 126) and a demand for trial by jury.  Doc. Ent. 1 at 43-46.  The complaint is signed under penalty of perjury. Doc. Ent. 1 at 47; 28 U.S.C. § 1746.

**B.      The Court Has Dismissed Twenty-nine of the Named Defendants.**

On August 13, 2012, Judge Murphy entered an order dismissing twenty-nine (29) defendants: Robinson, Jr., Lockhart, Jones-Bradley, Bright, Bledsoe-Ford, Coleman, Chatman and Bill, based on judicial immunity; Worthy, Jansen, Weingarden, Moody, Sinutko and Capling, based upon prosecutorial immunity; Gagniuk, Olsavsky, Parker, Cook, Tuddles and Sacks, on the basis that they were defense attorneys and not acting under color of state law; Thomas and Thompson, the complainants in Jones's criminal trial, on the basis that plaintiff's claims against them did not satisfy Fed. R. Civ. P. 8(a)'s pleading requirements; 36th District Court, Wayne County Circuit Court and Michigan State Police, as state agencies immune from suit under 42 U.S.C. § 1983 by way of the Eleventh Amendment; Godbee, Bing and Napoleon, based on plaintiff's failure to allege specific conduct by any of these supervisor defendants; and Wayne County Sheriff's Department on the basis that it is not a legal entity subject to suit under 42 U.S.C. § 1983.  Doc. Ent. 6.[8]

Therefore, there are only six (6) remaining defendants: five (5) police officers (Parra, Stopzynsky, Decker, Mendoza and McGowan) and the DPD.

**C.      Parra, Stopzynsky, Decker and McGowan Have Yet to Appear.**

---

[8]On September 6, 2012, attorney Geoffrey M. Brown appeared on behalf of defendant Jonathan Sacks of the State Appellate Defender Office.  Doc. Ent. 7; www.michbar.org.

4

On November 16, 2012, the U.S. Marshal acknowledged receipt of documents for service of process upon these six (6) defendants at the DPD, 1300 Beaubien Street, Detroit, Michigan 48226.  Doc. Ent. 10.  The U.S. Marshal attempted service by mail on November 19, 2012.[9]

However, on January 14, 2013, the U.S. Marshal informed the Court that the waivers of service sent to McGowan and Stopzynsky were returned unexecuted, because service was refused at the address given.[10]  While the docket indicates that defendants DPD and Mendoza returned executed waivers of service,[11] there is no indication that Decker and Parra have appeared.

**D.     Mendoza and DPD Have Filed a Motion for Summary Judgment.**

Currently before the Court is defendants DPD and Mendoza's January 14, 2013 motion for summary judgment.  Doc. Ent. 12.  Defendants sole argument is that "[t]he applicable statutes of limitation bar all of plaintiff's claims."  Doc. Ent. 12 at 10-12.

Judge Murphy has referred this case to me for all pretrial matters.  Doc. Ent. 13.  On January 15, 2013, I entered an order setting the deadline for plaintiff's response for February 6, 2013.  Doc. Ent. 14.

On January 28, 2013, plaintiff filed a verified declaration in response (Doc. Ent. 15 at 1-7), a response brief (Doc. Ent. 15 at 8-12) and a statement of disputed factual issues (Doc. Ent. 16 at 1-3).

**E.     The Court Should Construe Mendoza and DPD's Motion for Summary Judgment**

---

[9]On the same day, the Clerk's Office filed a notice that the filing fee had been paid in full.  Doc. Ent. 11.

[10]*See* January 14, 2013 text-only docket entries.

[11]*See* January 30, 2013 text-only docket entries.

as a Fed. R. Civ. P. 12(b)(6) Motion to Dismiss and Grant Such Motion.

1. **Tremain Jones's three 2005 and 2006 Wayne County Circuit Court cases provide some background for the facts underlying plaintiff's June 2012 complaint.**

For example, in *People v. Jones*, Case No. 05-009068-01-FC (Wayne County), the warrant was signed on August 18, 2005, and a motion to amend the information was filed the following day. On August 26, 2005, Judge David S. Robinson, Jr. (36th District Court), arraigned Jones on the warrant; entered Jones's pleas of "not guilty;" and set an individual cash bond for $250,000.00. *See* Case No. 2:08-cv-14126-LPZ-MJH (E.D. Mich.), Doc. Ent. 8-2.

Then, on August 26, 2005, a warrant was signed in *People v. Jones*, Case No. 06-003310-01-FC (Wayne County). The warrant in *People v. Jones*, Case No. 06-003384-01-FC (Wayne County) was signed on November 4, 2005. In each of these two cases, the arraignment on the warrant took place on November 10, 2005. *See* Case No. 2:08-cv-14126-LPZ-MJH (E.D. Mich.), Doc. Ent. 8-3, Doc. Ent. 8-4.

2. **Plaintiff's June 2012 complaint as to the six remaining defendants concerns the events of August 23-26, 2005 - from Jones's arrest through his confinement at the DPD's 7th Precinct.**

In the instant case, plaintiff's allegations begin with his August 23, 2005 arrest and continue through his November 10, 2005 arraignment on the warrant, his March 20, 2006 competency hearing and preliminary examination, his March 27, 2006 arraignment on the information, his April 7, 2006 pleas of nolo contendere, his April 24, 2006 sentencing and his January 24, 2007 motion to remove appellate counsel. *See* Doc. Ent. 1 ¶¶ 30-74.[12] And, as noted above, Jones's application(s) for leave to appeal were denied by the Michigan Supreme Court on

---

[12]*See also* Case No. 2:08-cv-14126-LPZ-MJH (Doc. Entries 8-2, 8-3 & 8-4).

September 24, 2007.  *See Jones v. Lafler*, Case No. 2:08-cv-14126-LPZ-MJH (E.D. Mich.) (Doc.

Entries 8-2, 8-3 & 8-4); *see also People v. Jones*, No. 134428, COA No. 277677, 480 Mich. 893,

738 N.W.2d 745 (Sept. 24, 2007).

However, plaintiff's claims against remaining defendants Detroit Police Officers Parra,

Stopzynsky, Decker and Mendoza; State of Michigan Police Officer McGowan; and DPD

concern the events of August 23-26, 2005 - from Jones's arrest through his confinement at the

Detroit Police Department's 7th Precinct.  *See* Doc. Ent. 1 ¶¶ 18-19, 22, 30-47.  According to

plaintiff, he was unlawfully transported to the custody of Wayne County Sheriff's Department

on August 27, 2005.  Doc. Ent. 1 ¶ 48.

According to plaintiff, it was not until November 10, 2005, when he was being

transported back from 36th District Court after the arraignment on the warrant by Judge Lockhart,

that a Wayne County Deputy Sheriff took Jones to Detroit Receiving Hospital, where he was

"evaluated and medically treated for his epilepsy[.]"  Doc. Ent. 1 ¶ 49; *see also* Doc. Ent. 15 ¶ 9.

**3.**   **Plaintiff's June 2012 complaint alleges constitutional, statutory and perhaps even tort claims with respect to the remaining defendants' August 2005 actions.**

In his preliminary statement, plaintiff claims that his complaint alleges causes of action

based upon state and federal statutes (Mich. Comp. Laws § 750.369 ("Abuse of legal process");

18 U.S.C. §§ 1501-1521 (Obstruction of Justice); 18 U.S.C. §§ 1961-1968 (RICO); 28 U.S.C. §§

2671-2680 (Tort Claims Procedure)); causes of action by way of 42 U.S.C. § 1983 based upon

applying the wrong procedure in violation of his right to Due Process, selective or vindictive

enforcement and equal protection of the laws; causes of action alleging excessive use of force

and denial of medical care in violation of the Eighth Amendment; causes of action alleging

unlawful arrest, confinement, and prosecution in violation of the Fourth and Fourteenth

Amendments; and state-law torts of assault, battery and negligence. *See* Doc. Ent. 1 at 5; *see also* Doc. Ent. 1 ¶ 124.

Within his one hundred twenty-six paragraph complaint, plaintiff makes several claims regarding the remaining six defendants. In an apparent attempt to allege a claim of **improper arrest**, plaintiff claims that on August 23, 2005:

> Plaintiff was forcibly removed from his motor vehicle in the parking lot of a McDonald's Restaurant, located at 7 Mile Road and Woodward Avenue in the City of Detroit, placed into a police car, and immediately conveyed to the 7th Precinct, a municipal jail for the City of Detroit, in the State of Michigan by . . . [Parra, Stopzynski, Decker, Mendoza and McGowan] without warning or provocation or [explanation].

Doc. Ent. 1 ¶ 30. Thereafter, plaintiff describes a coercive interrogation by these defendants; his repeated requests for his prescribed "anti-seizure" medications, which were in his right pants pocket; a physically abusive interrogation, which resulted in "multiple acute epileptic seizure episodes." Plaintiff claims that certain officers "did not intervene to stop the brutal assault." According to plaintiff, he "did not resist or threaten" any of the remaining, individual defendants, nor did he break any jail rules. Following the assault, Parra and Decker stood over plaintiff, held a sheet of paper in front of him, and Parra said, "all you've gotta do is sign this paper and we will get you to the hospital right-away." Plaintiff "unknowingly signed the fraudulently authored confession," which had been written by Parra. Plaintiff claims that, despite asking Parra, Stopzynski, Decker, Mendoza and McGowan, plaintiff "was never taken to any hospital . . . only left in a jail cell, in continuo[u]s pain and discomfort from his injuries." *See* Doc. Ent. 1 ¶¶ 31-44.

After alleging **"excessive use of force,"** Doc. Ent. 1 ¶¶ 35-44, plaintiff alleges **"denial of medical care,"** Doc. Ent. 1 ¶¶ 45-53. For example, plaintiff alleges that, on August 24, 2005,

while confined at the DPD, his left eye was swollen shut, there was blood all over his clothing due to the above-described assault, and he still had not received medical care and had not been given his prescribed "anti-seizure" medications, even though Parra, Stopzynski, Decker, Mendoza or McGowan "knew that [plaintiff] had suffered multiple acute epileptic seizure episodes during their assault on him."  Doc. Ent. 1 ¶ 45; *see also* Doc. Ent. 1 ¶ 126.  According to plaintiff, from August 24, 2005 through August 26, 2005, he "was re-interrogated for countless hours by [Parra, Stopzynski, Decker, Mendoza and McGowan], trying to get him to confess to the crimes charged-against him, without taking him to the hospital to be treated for his injuries, [which were] inflicted upon [him] by [Parra, Stopzynski, Decker, Mendoza and McGowan]."  Doc. Ent. 1 ¶ 46.  *See also* Doc. Ent. 1 ¶¶ 51, 52, 53.

Plaintiff also alleges a **violation of RICO**.  Doc. Ent. 1 ¶¶ 54-74.  For example, plaintiff claims that on August 26, 2005, while he was in the custody of DPD, Parra, Stopzynski, Decker, Mendoza and McGowan, Assistant Wayne County Prosecutor Joseph P. Jansen went to Judge David S. Robinson, Jr. (36th District Court) and "procured an invalid ARREST WARRANT against the Plaintiff."  Doc. Ent. 1 ¶ 47; *see also* Doc. Ent. 1 ¶ 54.  Also, plaintiff claims that defendants Parra, Decker, Stopzynsky, Mendoza and McGowan's August 23, 2005 threat that he would receive a natural life sentence played a part in his combined fourteen (14) April 7, 2006 nolo contendere pleas in his Wayne County cases.  Doc. Ent. 1 ¶ 66; *see also* Doc. Ent. 1 ¶ 31; Doc. Ent. 12 at 14-17 (OTIS Offender Profile).  In fact, plaintiff describes Parra, Stopzynski, Decker, Mendoza and DPD as having presented themselves as complaining witnesses to Judge Robinson "under false pretenses, in order to procure the invalid ARREST WARRANT again[s]t Plaintiff, when they all knew that [Thomas or Thompson] never filed any Criminal Complaint . .

9

. charging the Plaintiff with any crimes whatsoever." Doc. Ent. 1 ¶ 76.[13]

Plaintiff's claim against defendant DPD is based, at least in part, upon **municipal liability**. According to plaintiff, DPD "failed to adhere to [its] own policies, rules, regulations, operating procedures, and the laws of this State, in violation of [its] Commercial Contract with the People of the State of Michigan, and this failure injured the Plaintiff tragically." *See* Doc. Ent. 1 ¶¶ 89-90; *see also* Doc. Ent. 1 ¶ 50.

Within his **state-law claim for abuse of process**, *see* Mich. Comp. Laws § 750.369 ("Abuse of legal process"), Doc. Ent. 1 ¶¶ 93-99, plaintiff claims that Parra, Stopzynsky, Decker, Mendoza and McGowan "abused the criminal process by using it for an ulterior motive and/or purpose to cause trouble, embarrassment and damage to Plaintiff, when they conspired one, in concert, with the other, to falsify documents acting as Complaining Witnesses on the invalid ARREST WARRANT used against Plaintiff, and submitted it to [Judge] Robinson . . . as being true and correct on all facts contained therein (without a probable cause determination), and knowing that no Criminal Complaint had been filed against the Plaintiff, such use of process wasn't legitimate, regular or legal[.]" Doc. Ent. 1 ¶ 94.[14]

Finally, plaintiff appears to allege **First Amendment retaliation**. For example, he

_____

[13]Plaintiff also mentions DPD, Parra, Stopzynsky, Decker, Mendoza and McGowan with regard to his claims against the 36th District Court's Magistrates and Judges (*see* Doc. Ent. 1 ¶ 82) and his claims against Godbee, Napoleon and Bing (*see* Doc. Ent. 1 ¶¶ 91-92).

[14]Plaintiff brings his claims for selective enforcement against various Judges and Magistrates of the 36th District Court and Wayne County Circuit Court, the Wayne County Prosecutor, the Mayor of Detroit, the City of Detroit Chief of Police and the Wayne County Sheriff. Doc. Ent. 1 ¶¶ 100-106. Within these paragraphs, plaintiff mentions the five remaining individual defendants. *See* Doc. Ent. 1 ¶¶ 103, 105.

Also, plaintiff brings his claim for use and/or application of the wrong procedure against judges and prosecuting attorneys. *See* Doc. Ent. 1 ¶¶ 107-111.

mentions "the suffering from the exercise of his Constitutional Rights against the Defendants' conduct[.]" Doc. Ent. 1 ¶ 124.  Then, citing *Siggers-El v. Barlow*, 412 F.3d 693 (6ᵗʰ Cir. 2005),[15] plaintiff alleges that defendants Parra, Stopzynski, Decker, Mendoza, McGowan, the DPD and other defendants "engaged-in retaliatory tactics and conduct to silence and punish [him] for not talking during the custodial interrogation and complaining about their wayward conduct" to other defendants, including judges, an assistant prosecutor and defense attorneys.  Doc. Ent. 1 ¶ 125.  Plaintiff also alleges that Parra, Stopzynski, Decker, Mendoza and McGowan's actions "created a chilling-effect on Plaintiff's right to secure his liberty."  Doc. Ent. 1 ¶ 126.

Plaintiff seeks declaratory relief against defendants Parra, Stopzynski, Decker, Mendoza and McGowan.  Doc. Ent. 1 ¶ 114.  Plaintiff also seeks injunctive relief against defendants Parra, Stopzynski, Decker, Mendoza, McGowan and DPD.  Doc. Ent. 1 ¶ 120.

Defendants Parra, Stopzynski, Decker, Mendoza and McGowan are sued in their individual and official capacities.  Doc. Ent. 1 ¶ 122.  Defendant DPD is sued in its official capacity.  Doc. Ent. 1 ¶ 123.

### 4.    Defendants DPD and Mendoza argue that plaintiff's 42 U.S.C. § 1983 claims, state law tort claims and RICO claim are barred by the applicable statutes of limitation.

In their January 14, 2013 motion for summary judgment, defendants DPD and Mendoza cite ¶¶ 30-31, 45-47, 49 & 52 of plaintiff's complaint and contend that "the alleged conduct upon which plaintiff sues the DPD and Officer Mendoza occurred in 2005, and most certainly no later

---

[15]In *Siggers-El,* plaintiff "brought this claim against his resident unit manager (RUM), Defendant David Barlow, in which he alleged that the Defendant transferred him to another prison in retaliation for exercising his First Amendment rights when he complained to the Defendant's supervisors that the Defendant had failed to authorize disbursements of money from the Plaintiff's prison account to pay his lawyer to review his appellate brief and file and to meet with him concerning his criminal conviction."  *Siggers-El*, 412 F.3d at 696.

than some time in 2006." Doc. Ent. 12 at 9.

As noted above, defendants sole argument is that "[t]he applicable statutes of limitation bar all of plaintiff's claims." Doc. Ent. 12 at 10-12. It is defendants' position that "[f]or his Section 1983 claims, as well as for any state law tort claim, plaintiff was obliged to file claims based upon that conduct no later than by the end of 2008." Doc. Ent. 12 at 11. Additionally, defendants maintain that "the statute of limitations on any possible RICO claim would have expired in 2010, if not earlier." Doc. Ent. 12 at 12.

**5.     Plaintiff responds that defendants' motion is untimely and that genuine issues of material fact remain.**

**a.**     In response to the statute of limitations argument, plaintiff contends that he "was made-aware of the fact that [he] suffered, and continue[s] to be suffering from, the onset of multiple acute epileptic seizure episodes, due to no fault of [his] own, but that of defendants Parra, Stopzynski, Decker, Mendoza, McGowan, DPD, and MSPD, when [he] was in police custody, during a custodial interrogation by the aforementioned defendants[.]" Doc. Ent. 15 ¶ 2 (citing Doc. Ent. 1 ¶¶ 30-31).

Plaintiff also claims that defendants "have failed to answer to provide any substantial or compelling objections to the claims contained within the Complaint itself, essentially admitting to the claims asserted within [plaintiff's] Complaint." Doc. Ent. 15 ¶ 3; *see also* Doc. Ent. 15 at 10 (citing *Dickens v. Jones*, 203 F.Supp.2d 354 (E.D. Mich. 2002) (Tarnow, J.)).[16]

Additionally, plaintiff claims that defendants' time for answering the complaint has

---

[16]"When a state's return to a habeas corpus petition fails to dispute the factual allegations contained within the habeas petition, it essentially admits these allegations." *Dickens*, 203 F.Supp.2d at 360 (citing *Bland v. California Dept. of Corrections*, 20 F.3d 1469, 1474 (9th Cir.1994)).

expired.  Doc. Ent. 15 ¶ 4.  Apparently referring to Fed. R. Civ. P. 16(b)(2), which concerns the

time to issue a scheduling order,[17] and Fed. R. Civ. P. 56(b), which concerns the time to file a

motion for summary judgment,[18] plaintiff encourages the Court to note that neither Mendoza nor

the DPD requested a stay of discovery; conclude that the 120 days of discovery began on

September 6, 2012, when attorney Brown appeared on behalf of defendant Sacks (Doc. Ent. 7)

and terminated on January 3, 2013; determine that a motion for summary judgment was due 30

days after the close of discovery - on or about February 2, 2013; and, therefore, determine that

defendants January 14, 2013 motion for summary judgment (Doc. Ent. 12) is tardy.  Doc. Ent. 15

¶ 5.

 Next, plaintiff argues that there are genuine issues of material fact.  Doc. Ent. 15 ¶¶ 6-14.

In so doing, he recounts the events of August 23, 2005 through August 26, 2006, at the same

time citing portions of his complaint's statement of facts (Doc. Ent. 1 ¶¶ 30-34), claims of

excessive use of force (Doc. Ent. 1 ¶¶ 35-44) and claims of denial of medical care (Doc. Ent. 1

¶¶ 45-53).  *See* Doc. Ent. 15 ¶¶ 7-13.

**b.** Within his response brief (Doc. Ent. 15 at 8-12), plaintiff argues that "[t]here are genuine

issues of material fact that preclude summary judgment for the defendants on the plaintiff[']s

e[xc]essive use of force and denial of medical care claim[.]"  Doc. Ent. 15 at 10-11.  According

to plaintiff:

---

[17]"The judge must issue the scheduling order a soon as practicable, but in any event within the earlier of 120 days after any defendant has been served with the complaint or 90 days after any defendant has appeared."  Fed. R. Civ. P. 16(b)(2) ("Time to Issue.").

[18]"Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery."  Fed. R. Civ. P. 56(b) ("Time to File a Motion.").

> The declarations of the plaintiff and the defendants are squarely contradictory as to what force was used, when it was used, and why it was used. The allegations in the plaintiff's Complaint portray a completely needless use of e[xc]essive force against an accused who was in the care, custody, and supervision of Parra, Stopzynski, Decker, McGowan, Mendoza and DPD and was cooperating with every instruction and/or order he had been given.

Doc. Ent. 15 at 10. Citing *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992) and *Whitley v. Albers*, 475 U.S. 312, 320-321 (1986),[19] plaintiff claims, "[t]he facts alleged by the plaintiff are evidence that Parra, Stopzynski, Decker, Mendoza, McGowan and DPD were all acting 'maliciously and sadistically to cause harm' [and] would support a jury verdict in the plaintiff's favor." Doc. Ent. 15 at 11.

**c.**    Then, in his statement of disputed factual issues,[20] plaintiff characterizes his complaint as alleging that he "was falsely arrested, brutally beaten by Parra, Stopzynski, Decker, Mendoza, DPD and McGowan, and denied medical treatment by these defendants in 2005." Doc. Ent. 16 at 1. Plaintiff enumerates thirteen (13) genuine issues of material fact which, he argues, require the Court to deny defendants Mendoza and DPD's motion for summary judgment (Doc. Ent. 12).

For example, plaintiff questions whether the remaining defendants "lawfully acquired 'subject-matter-jurisdiction' over the plaintiff's physical person or over the instant case in which he was charged, prosecuted, convicted and sentenced to prison [in his] Wayne County Circuit Court [cases][,]" Doc. Ent. 16 ¶ 1; items which are specifically discussed in his complaint, Doc.

---

[19]"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7.

[20]Plaintiff seems to have supplied this filing pursuant to E.D. Mich. LR 7.1 ("Motion Practice"), Subsection (d)(2) ("Form of Required Briefs.") or E.D. Mich. LR 16.2 ("Joint Final Pretrial Order"), Subsection (b) ("Contents of Order."). *See* Doc. Ent. 16 at 1-2.

14

Ent. 16 ¶¶ 2-8; whether he resisted or disobeyed these defendants, Doc. Ent. 16 ¶¶ 9-11; whether

the force used against plaintiff by the five remaining individual defendants "was applied in a

'good-faith' effort to maintain or restore discipline or maliciously and sadistically to cause great

bodily harm[,]" Doc. Ent. 16 ¶ 12; and whether plaintiff's injuries "resulted from his own

resistance to [the remaining defendants] or from their purposeful use of unnecessary force[,]"

Doc. Ent. 16 ¶ 13.

**6.      The Court should construe defendants Mendoza and DPD's January 14, 2013 motion for summary judgment as a Fed. R. Civ. P. 12(b)(6) motion to dismiss and grant such motion.**

**a.      The January 14, 2013 dispositive motion (Doc. Ent. 12) is timely.**  Assuming Mendoza

and DPD timely returned the requests for waiver sent to them on November 19, 2012, their

answer was due on or about January 21, 2013.  *See* Fed. R. Civ. P. 4(d)(3); Fed. R. Civ. P. 6(d).

Although an answer to a complaint is a specific pleading (*see* Fed. R. Civ. P. 7(a)(2)), Fed. R.

Civ. P. 12(b) ("How to Present Defenses.") provides:

> Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required.  But a party may assert the following defenses by motion:
>
> (1)      lack of subject-matter jurisdiction;
> (2)      lack of personal jurisdiction;
> (3)      improper venue;
> (4)      insufficient process;
> (5)      insufficient service of process;
> (6)      *failure to state a claim upon which relief can be granted;* and
> (7)      failure to join a party under Rule 19.
>
> *A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed.*  If a pleading sets out a claim for relief that does not require a responsive pleading, an opposing party may assert at trial any defense to that claim.  No defense or objection is waived by joining it with one or more other defenses or objections in a responsive pleading or in a motion.

Fed. R. Civ. P. 12(b) (emphasis added).  Furthermore, "[a] defendant may raise a statute of limitations defense in the context of a Rule 12(b)(6) motion to dismiss."  *Reid v. Baker*, No. 11-5473, 2012 WL 3893122, 4 (6th Cir. Sept. 7, 2012) (citing *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir.2012)).  Construing the instant motion as a Fed. R. Civ. P. 12(b)(6) motion to dismiss,[21] the motion is timely.

**b.**     **Plaintiff's 42 U.S.C. § 1983 claim and state tort claim(s) are barred by the applicable statute of limitations.**  "[S]ection 1983 claims [are] best characterized as tort actions for the recovery of damages for personal injuries and federal courts must borrow the statute of limitations governing personal injury actions in the state in which the section 1983 action was brought."  *Banks v. City of Whitehall*, 344 F.3d 550, 553 (6th Cir. 2003)  (citing *Wilson v. Garcia*, 471 U.S. 261, 275-76 (1985)).  "[T]he appropriate statute of limitations to be borrowed for § 1983 actions arising in Michigan is the state's three-year limitations period for personal injury claims."  *Drake v. City of Detroit, Michigan*, 266 Fed.Appx. 444, 448 (6th Cir. 2008) (citing Mich. Comp. Laws § 600.5805(10); *Chippewa Trading Co. v. Cox*, 365 F.3d 538, 543 (6th Cir.2004)).

"Under federal law as developed in this Circuit, the statute of limitations period begins to run when the plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred."  *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996) (citing *Friedman v.*

---

[21]Although defendants' Mendoza and DPD's motion is labeled a Fed. R. Civ. P. 56 motion for summary judgment, in substance it is a Fed. R. Civ. P. 12 motion to dismiss which presents as its only argument a statute of limitations defense.  This characterization is unchanged by defendants' attachment of plaintiff's January 11, 2013 MDOC Offender Tracking Information System (OTIS) Offender Profile (Doc. Ent. 12 at 14-17), which appears to have been attached solely to show what plaintiff pleaded to and was sentenced to in 2006.  *See* Doc. Ent. 12 at 9.

*Estate of Presser*, 929 F.2d 1151, 1159 (6th Cir.1991)).  "Stated differently, '[i]n determining

when the cause of action accrues in § 1983 cases, we look to the event that should have alerted

the typical lay person to protect his or her rights.'"  *Cooey v. Strickland*, 479 F.3d 412, 416 (6th

Cir. 2007) (quoting *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 856 (6th Cir.2003)).  "We

must therefore look at when the harm in question occurred, guided by the principle that '[a]

plaintiff has reason to know of his injury when he should have discovered it through the exercise

of reasonable diligence.'"  *Cooey*, 479 F.3d at 416 (quoting *Sevier v. Turner*, 742 F.2d 262, 273

(6th Cir. 1984)).  *See also LRL Properties v. Portage Metro Housing Authority*, 55 F.3d 1097,

1107 (6th Cir. 1995).[22]

　　　　To the extent plaintiff responds to defendants' statute of limitations argument by

contending that he continues to suffer from Parra, Stopzynski, Decker, Mendoza and DPD's

August 2005 actions (*see*, *i.e.*, Doc. Ent. 1 ¶¶ 52, 126; Doc. Ent. 15 ¶¶ 2, 10), it remains the case

that the acts providing the bases of plaintiff's injuries against these defendants are his August 23,

2005 arrest, as well as the alleged coercive and abusive interrogation and requests for medicine

and/or medical treatment which took place before plaintiff's August 27, 2005 transfer to the

custody of the Wayne County Sheriff's Department.  In other words, the statute of limitations

period began to run at the time of these defendants' alleged August 2005 actions, because for the

most part plaintiff knew that these acts occurred at the time the acts happened (*see* Doc. Ent. 1 ¶¶

30-46).  Therefore, plaintiff's 42 U.S.C. § 1983 claims and any state law tort claims based upon

---

[22]*See also Ruff v. Runyon*, 258 F.3d 498, 501 (6th Cir. 2001) ("'This inquiry focuses on
the harm incurred, rather than the plaintiff's knowledge of the underlying facts which gave rise to
the harm.'") (quoting Friedman v. Estate of Presser, 929 F.2d 1151 (6th Cir. 1991) (citing
*Shannon v. Recording Industry Ass'n of America*, 661 F.Supp. 205, 210 (S.D. Ohio 1987))).

17

the remaining defendants' August 2005 actions for the most part should have been filed no later than 2008.[23]

To the extent plaintiff's Section 1983 claims and any state law tort claims are based upon these defendants' August 2005 actions which allegedly did not become known to plaintiff until a later date during his Wayne County Circuit Court cases, the instant June 12, 2012 complaint (Doc. Ent. 1) was still filed after the three-year statute of limitations had run.  For example, plaintiff claims that he unknowingly signed a fraudulently authored confession on or about August 23, 2005 and states that, during the March 20, 2006 preliminary examination before Judge Ford, Parra testified that he wrote the confession.  Doc. Ent. 1 ¶¶ 42-43.  Here, it could be argued that acts providing a basis for plaintiff's injuries include what was discovered at the March 20, 2006 preliminary examination.  Furthermore, as I noted earlier, plaintiff's complaint mentions his November 10, 2005 arraignment on the warrant, his March 20, 2006 competency hearing and preliminary examination, his March 27, 2006 arraignment on the information, his April 7, 2006 pleas of nolo contendere, his April 24, 2006 sentencing and his January 24, 2007 motion to remove appellate counsel.  *See* Doc. Ent. 1 ¶¶ 30-74.

Even if plaintiff intended the characterization of his Section 1983 claims and state law tort claims to include his latent discovery of the remaining defendants' August 2005 actions, such as discovery of the August 2005 actions during the development of Jones's Wayne County

---

[23]Within his June 2012 complaint, plaintiff claims that "if [he] is not properly provided with an examination by a medical provider who specializes in the operation and restoration of the human brain (i.e., neurologist) as needed, he risks permanent disability, or worse, death." Doc. Ent. 1 ¶ 53.  However, any claim by plaintiff that he is *currently* experiencing deliberate indifference to a serious medical need must be filed against the individual allegedly denying plaintiff such medical care.

cases (*i.e.*, at the time of his March 20, 2006 competency hearing and preliminary examination (Doc. Ent. 1 ¶¶ 42, 61), his April 24, 2006 sentencing (Doc. Ent. 1 ¶ 67) or his January 24, 2007 motion to remove appellate counsel (Doc. Ent. 1 ¶ 70)), plaintiff knew or had reason to know that these discoveries occurred at the time they occurred.[24]

   In other words, to the extent plaintiff's 42 U.S.C. § 1983 claims and any state law tort claims which were based upon the remaining defendants' August 2005 actions which did not become known to him until a later date during his Wayne County Circuit Court cases, plaintiff's complaint should have been filed no later than 2009 (if plaintiff was arguing that during the March 20, 2006 preliminary examination he discovered that the document he had signed in August 2005 was a confession or if plaintiff was arguing that the remaining defendants' August 2005 actions affected the sentences imposed on April 24, 2006) or no later than 2010 (if plaintiff was arguing that the remaining defendants' August 2005 actions affected plaintiff's January 24, 2007 motion to remove appellate counsel or the Michigan Court of Appeals May 21, 2007 decision(s) or the Supreme Court of Michigan's September 24, 2007 decision(s)).

**c.     The same is true for any RICO claim by plaintiff against these defendants for their alleged August 2005 actions or to the extent plaintiff claims that such actions affected his cases in Wayne County Circuit Court.**   "The Supreme Court has imposed a four-year statute of limitations on RICO claims." *Sims v. Ohio Cas. Ins. Co.*, 151 Fed.Appx. 433, 435 (6th Cir. 2005) (citing *Agency Holding Corp. v. Malley-Duff & Associates, Inc.*, 483 U.S. 143, 156 (1987)). "The four-year period begins to run when a party knew, or through exercise of reasonable

---

   [24]*See also Jones v. Lafler*, Case No. 2:08-cv-14126-LPZ-MJH (E.D. Mich.) (Doc. Entries 8-2, 8-3 & 8-4).

19

diligence should have discovered, that the party was injured by a RICO violation." *Sims*, 151

Fed. Appx. at 435 (citing *Rotella v. Wood*, 528 U.S. 549, 553-55 (2000)).  Whether referring to

plaintiff's allegation regarding his March 20, 2006 competency hearing and preliminary

examination (*see* Doc. Ent. 1 ¶¶ 42, 61) or his sentences imposed on April 24, 2006 (Doc. Ent. 1

¶ 67),[25] the Court should agree with defendants Mendoza and DPD that "the statute of limitations

on any possible RICO claim would have expired in 2010, if not earlier."  Doc. Ent. 12 at 12.

And, to the extent any such RICO claim concerned the Michigan Supreme Court's September

24, 2007 decision(s), it should have been filed no later than 2011.

## III.   NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as

provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific

objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140

(1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United

States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but

fail to raise others with specificity, will not preserve all the objections a party might have to this

Report and Recommendation.  *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v.

Detroit Federation of Teachers Local 231, American Federation of Teachers, AFL-CIO*, 829

---

[25]Tremain Jones was found competent by 36th District Judge Ford on March 20, 2006 in Wayne County Case Nos. 06-003310-01-FC and 06-003384-01-FC.  The Register of Actions also indicates that on March 20, 2006 in Case No. 06-003310-01-FC, Judge Ford bound Tremain Jones over after a preliminary examination.  As noted above, Circuit Judge Bill sentenced plaintiff in Case Nos. 05-009068-01-FC, 06-003310-01-FC and 06-003384-01-FC on April 24, 2006.  *See Jones v. Lafler*, Case No. 2:08-cv-14126-LPZ-MJH (E.D. Mich.) (Doc. Entries 8-2, 8-3 & 8-4)

F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives _____
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated:4/4/13

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and  by electronic means or U.S. Mail on April 4, 2013.

s/Eddrey Butts _____
Case Manager

21